UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDMUND CALLAHAN, | : | CIVIL ACTION NO.: |
| Plaintiff, | : | |
| v. | : | |
| EDELMAN FINANCIAL SERVICES, LLC and EDELMAN FINANCIAL ENGINES, LLC, | : | |
| Defendants. | : | AUGUST 22, 2025 |

## COMPLAINT

Plaintiff Edmund Callahan, by and through counsel, files this Complaint against Defendant Edelman Financial Services, LLC, ("EFS"), and Defendant Edelman Financial Engines, LLC, ("EFE"). Mr. Callahan alleges the following in support of this Complaint:

### PARTIES

1. Mr. Callahan is, and at all times relevant to the allegations in this Complaint was, a citizen of the state of Connecticut, residing in Fairfield County, Connecticut.

2. EFS is a limited liability company registered in the state of Delaware. Upon information and belief, its principal office is located at 28 State Street, 21st Floor, Boston, Massachusetts 02109. EFS is registered to do business as a foreign LLC in the state of Connecticut.

3. EFE is a limited liability company registered in the State of Delaware. Upon information and belief, its principal office is located at 28 State Street, 21st Floor, Boston, Massachusetts, 02109. EFE is registered to do business as a foreign LLC in the state of Connecticut.

4. On information and belief, EFS is now a subsidiary of and/or became a part of EFE through a series of corporate transactions. Therefore, on information and belief, EFS and EFE are now the same entity and/or are parts of the same entity. EFS and EFE will collectively be referred to as "EFE" or "Defendants."

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The controversy is between citizens of different states and the amount in controversy is greater than $75,000:

   a. Upon information and belief, there is complete diversity amongst the parties to this lawsuit because the sole member of EFE, The Edelman Financial Engines Center, LLC, is not a citizen of Connecticut. The Edelman Financial Engines Center, LLC, is a limited liability company registered in the State of Delaware with its principal office located at 28 State Street, 21st Floor, Boston, Massachusetts, 02109, and it is not registered to do business in the state of Connecticut.

   b. The value of the object of this litigation exceeds $75,000.[1] EFE regularly sues similarly situated advisors and seeks millions of dollars in damages. If Mr. Callahan's restrictive covenants are enforceable or if his conduct is deemed to be wrongful, he will face allegations and potential liability in amounts exceeding $75,000 (and EFE potentially states to gain such amounts).

6. This Court is a proper venue for resolving this dispute because (a) a substantial part of the events giving rise to this action occurred in Connecticut or, in the alternative, (b) there is no

---

[1] "In actions for declaratory or injunctive relief, which are equitable in nature, 'the amount in controversy is measured by the value of the object of the litigation.'" *See Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 135 (2d Cir. 2020).

district in which the action may otherwise be brought as provided in § 1391 and the Court has personal jurisdiction over both Defendants. *See* 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

7. From May of 2016 to September of 2018, Mr. Callahan was employed by Charles Schwab as a Vice President / Financial Consultant.

8. On September 12, 2018, EFS made an offer of employment to Mr. Callahan ("EFS Offer Letter) (**attached as Exhibit 1**).

9. Mr. Callahan accepted EFS's offer of employment and became an at-will employee of EFS starting on or about October 29, 2018.

10. Mr. Callahan signed the Compensation Agreement (**attached as Exhibit 2**) and the Proprietary Information, Non-Solicitation, Non-Disparagement, and Arbitration Agreement (the "PINNA") (**attached as Exhibit 3**).

11. Under the PINNA, EFS promised, as part of the purported valuable consideration in support of that agreement, to introduce Mr. Callahan to Clients and Potential Clients. *See* **Exhibit 3, pg. 1.**

12. The PINNA contains a non-solicitation provision which, in pertinent part, states the following:

    a. "Employee hereby agrees that Employee will not (other than on behalf of EFS while employed by EFS), . . . (1) Initiate contact with, directly or indirectly, or otherwise solicit, persuade, or induce or attempt to solicit, persuade, or induce, any Client with whom Employee has worked, communicated with or dealt during Employee's term of employment hereunder *or any other Client that received services from the office, branch or principal work location at which Employee was employed during*

3

*Employee's employment*, to terminate, reduce or not renew its relationship with EFS (or any subsidiary or affiliate thereof); or (2) Solicit, engage in, perform, divert, or accept any business of the same or similar nature to the Business of EFS with or from any Client *or Potential Client* whom Employee has solicited (directly or indirectly), with whom Employee has worked, communicated or dealt during Employee's term of employment hereunder, *or any other Client that received services from the office, branch or principal work location at which Employee was employed during Employee's employment*; . . ." See **Exhibit 3, ¶ 4(b) (emphasis added).**

13. The term of the PINAA's non-solicitation provision is the later of (a) 15 months from the date that Mr. Callahan's employment at EFS ends or (b) 15 months from the date a court of competent jurisdiction enters an order enforcing the non-solicitation provision. *See* **Exhibit 3, ¶ 4(e).**

14. Under the PINNA, the term "Client" is defined such that it includes customers who Mr. Callahan did not provide services to or have any direct contact with during his employment at EFS:

    a. "As used in this Agreement, the term 'Client' shall mean any person who at the time Employee's employment with EFS terminated was a recipient of services from EFS (or any of its parents, subsidiaries, or affiliates), as well as any persons who are known to Employee to be affiliates of a Client or persons who are members of the immediate family of a Client." *See* **Exhibit 3, ¶ 4(c).**

15. The PINNA also purports to prohibit Mr. Callahan from contacting or accepting business from people who EFS is not doing any business with (i.e., "Potential Clients"):

    a. "As used in this Agreement, 'Potential Client' shall mean any person to whom EFS (or any of its parents, subsidiaries, or affiliates), through any of their officers, employees, agents or consultants (or persons acting in any similar capacity), has, within the (12) twelve months prior to Employee's termination, offered to provide services *but who is not at such time a recipient of services from EFS or any of its parents or subsidiaries*. The preceding sentence is meant to exclude, cold calls, form letters, general advertising in mass media and blanket mailings." See **Exhibit 3, ¶ 4(c) (emphasis added).**

16. The PINNA contains a unilateral attorneys' fees provision that purportedly gives EFS the right to recover prevailing party attorneys' fees without giving a concomitant right to Mr. Callahan. *See* **Exhibit 3, ¶ 10(c).**

17. The interpretation of the PINNA is governed by Delaware law without regard to conflict of law principles. *See* **Exhibit 3, ¶ 11(c).**

18. As is contemplated by the Compensation Agreement, when Mr. Callahan's employment at EFS began, he negotiated an advance. *See* **Exhibit 2, pg. 2, ¶ B.** At that time, EFS represented to Mr. Callahan that he would have an indefinite amount of time to work off the advance. However, six months into his employment at EFS, EFS reneged on that promise and said that he only had two years to pay back the advance. This forced Mr. Callahan to try to onboard as many clients as possible in a short period of time which, in turn, meant he had to take on clients regardless of whether they were a good fit for Mr. Callahan and EFS. Mr. Callahan believes this was the first of many instances in which EFE put him in conflict with his fiduciary obligations to clients.

19.     Over the years, Mr. Callahan has become increasingly uncomfortable with how the leadership at EFE manages its business. Between 2018 and the present, EFE has had three different CEOs and there has been a revolving door of people passing through other C-suite positions. Each change in executive leadership has brought new policies and administrative changes, many of which appear to be focused on cost-cutting at the expense of providing high quality customer service and education.

20.     In addition, EFE has essentially stopped providing Mr. Callahan with leads. When he first joined the company, it was common for him to receive 45 leads a month. That lead flow has now dropped to as low as five leads a month. Instead, EFE's leadership has now shifted to emphasizing that financial advisors should continuously ask the clients they are already servicing to refer people in their personal network. Upon information and belief, Mr. Callahan alleges that EFE is systematically decreasing the amount of money that it is investing in marketing and lead generation efforts for financial advisors.

21.     EFE has a centralized team where all accounts are invested in the same manner and rebalanced and traded at the same time utilizing primarily passive ETFs and index funds. Centralized trading does not allow for advisors to choose investments to keep in a particular client's portfolio. Because of the centralized trading, EFE made it increasingly difficult for Mr. Callahan to manage the client accounts he was servicing in the hands-on manner to which some clients had become accustomed.

22.     EFE forced Mr. Callahan to utilize a customer service associate ("CSA") who repeatedly made material mistakes that negatively impacted clients. Mr. Callahan reported his dissatisfaction with the CSA's job performance multiple times to the CSA's manager and to his own manager but nothing was done for an extended period of time. On information and

KC 24858199.4
ME1\57099220.v1

belief, the CSA was eventually placed on a performance improvement plan ("PIP") and ultimately voluntarily resigned.

23. The foregoing issues and EFE executives' persistent refusal to address Mr. Callahan's concerns led Mr. Callahan to the conclusion that he could no longer remain employed at EFE while also fulfilling his fiduciary duty to his clients.

24. EFE has a well-documented history of aggressively suing departing financial advisors who notify their clients of their resignation and change of employment. For example, Mr. Callahan is aware of numerous lawsuits in other jurisdictions in which EFE has attempted to enforce non-solicitation provisions. When an investment advisor leaves EFE's employment, EFE typically attempts to assign the client accounts the departing advisor was servicing to a new advisor within the company. Furthermore, Mr. Callahan alleges on information and belief that EFE instructs the newly-assigned advisor to refrain from informing clients where the departing advisor went even if the new advisor knows the answer to that question and, in some instances, even goes so far as to mislead clients as to where the departing advisor went.

25. Given EFE's past litigation history, Mr. Callahan has good reason to believe that EFE would not allow him to fulfill his fiduciary obligation to notify clients he was servicing of his departure and/or that it would not participate in the process of him departing in good faith.

26. Mr. Callahan resigned from his employment at EFE on August 22, 2025, as he had the right to do as an at-will employee. Upon his resignation, he returned all company property as required by the PINNA and provided notice of his resignation to his manager, Brian Lipps (EFE, Regional Director), by a FedEx mailing.

27. Pursuant to his fiduciary obligation, Mr. Callahan notified the clients that he was servicing that he resigned from EFE.

28. Mr. Callahan did not ask clients to move their accounts to his new employer or otherwise solicit their business.

## COUNT I – DECLARATORY JUDGMENT
## 28 U.S.C. § 2201; Fed. R. Civ. P. 57

29. Mr. Callahan realleges and incorporates by reference all allegations contained in the paragraphs above as if fully stated herein.

30. Mr. Callahan is a party to the Offer Letter, the Compensation Agreement, and the PINNA.

31. A contract may be construed either before or after there has been a purported breach thereof. *See* 28 U.S.C. § 2201; Fed. R. Civ. P. 57.

32. An actual and immediate controversy has arisen and now exists between Mr. Callahan and EFE regarding the legality and effect of the agreements at issue herein.

33. Mr. Callahan seeks a declaration of rights under 28 U.S.C. § 2201 that:

   a. The PINNA's non-solicitation provision is void and unenforceable under Delaware law because it is not reasonably tailored to advance the legitimate economic interests of EFE. Specifically, it is overly broad and unenforceable because:

      i. It purports to prohibit Mr. Callahan from contacting or soliciting clients that he did not provide services to or have any direct contact with during his employment at EFS; and

      ii. It purports to prohibit Mr. Callahan from contacting or soliciting "Potential Clients" (i.e., individuals and/or entities that are not currently doing business with EFE and who have never previously done business with EFE);

   b. Whether verbally or in writing, Mr. Callahan was and is entitled to provide the clients he serviced while employed by EFE with a mere announcement of his change in employment, which announcement does not constitute a violation of the PINNA;

8

    c. Defendants cannot block or otherwise interfere with the transfer of a client's accounts if the client expresses a wish to transfer their accounts to Mr. Callahan's new employer;

    d. Defendants are barred from enforcing the PINNA's non-solicitation provision because they committed prior material breaches of the Compensation Agreement, the PINNA, and/or both by failing to provide him with adequate leads and/or by failing to provide him with competent CSA support to service clients;

    e. The PINNA's unilateral attorneys' fee provision is void and unenforceable as drafted and, to the extent it is enforceable at all, it is enforceable only if it allows for Mr. Callahan to also recover his reasonable attorneys' fees in the event he is successful in whole or in part in an arbitrated or judicially litigated dispute over the PINNA; and

    f. Defendants are barred from enforcing the PINNA's non-solicitation provision because they have unclean hands.

34. The declaratory judgment sought here will terminate the controversy and uncertainty over (a) whether, in what manner, and to what extent Mr. Callahan may notify clients he serviced about his departure from EFE, (b) whether and to what extent Mr. Callahan and/or his new employer can accept business from clients who indicate a desire to continue receiving financial advisory services from Mr. Callahan, and (c) the construction and/or validity of the PINNA's non-solicitation provision.

35. Mr. Callahan does not have an adequate remedy at law.

**REQUEST FOR RELIEF**

WHEREFORE, Mr. Callahan respectfully requests the Court to enter the declaratory judgment set out in paragraph 33 and all of its subparts and award him his costs, his reasonable attorneys' fees, and any other relief the Court deems just and proper.

KC 24858199.4
ME1\57099220.v1

## JURY DEMAND

Mr. Callahan demands a trial by jury as to all counts and causes of action for which a jury trial is available by law.

Dated: August 22, 2025  　　　　　　　　　　THE PLAINTIFF,
　　　　　Hartford, Connecticut　　　　　　　　EDMUND CALLAHAN

　　　　　　　　　　　　　　　　　　　　　　By:    /s/  Paula Cruz Cedillo
　　　　　　　　　　　　　　　　　　　　　　　　Thomas J. Finn
　　　　　　　　　　　　　　　　　　　　　　　　Federal Bar No.: ct 20929
　　　　　　　　　　　　　　　　　　　　　　　　Paula Cruz Cedillo
　　　　　　　　　　　　　　　　　　　　　　　　Federal Bar No.:  ct 23485
　　　　　　　　　　　　　　　　　　　　　　　　McCARTER & ENGLISH LLP
　　　　　　　　　　　　　　　　　　　　　　　　CityPlace I, 36th Floor
　　　　　　　　　　　　　　　　　　　　　　　　185 Asylum Street
　　　　　　　　　　　　　　　　　　　　　　　　Hartford, Connecticut 06103
　　　　　　　　　　　　　　　　　　　　　　　　Tel: 860.275.6700
　　　　　　　　　　　　　　　　　　　　　　　　Fax: 860.724.3397